1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   CINDY WAGNER,                          No.  2:20-cv-00403-JAM-DMC

12              Plaintiff,

13        v.                                **ORDER GRANTING IN PART AND**
                                            **DENYING IN PART**
14   SHASTA COUNTY; SHASTA COUNTY           **DEFENDANT'S MOTION FOR**
     SHERIFF'S DEPARTMENT; and DOES 1       **JUDGMENT ON THE PLEADINGS**
15   through 20, inclusive,

16              Defendants.

17

18        On January 23, 2020, Cindy Wagner ("Plaintiff") filed suit

     against Shasta County, the Shasta County Sheriff's Department,
19
     and Does 1-20 in Shasta County Superior Court, alleging several
20
     civil rights violations under 42 U.S.C. § 1983 and California
21
     Civil Code § 52.1.  See Compl., ECF No. 1.  Shasta County
22
     ("Defendant") removed the case to federal court, see Notice of
23
     Removal, ECF No. 1, on February 21, 2020, and now moves for
24
     judgment on the pleadings.  Mot. for JOP ("Mot."), ECF No. 21.
25
     Plaintiff filed an opposition, ECF No. 22, to which Defendant
26
     replied, ECF No. 23.  For the reasons set forth below, the Court
27
     GRANTS in part and DENIES in part Defendant's Motion for Judgment
28

                                      1

1   on the Pleadings.[1]

2

3                         I.   FACTUAL ALLEGATIONS

4          On April 17, 2019, Cindy Wagner ("Plaintiff") and her

5   husband were taken into custody at the Shasta County Jail due to

6   an alleged verbal dispute.  Compl. ¶ 10, ECF No. 1.  While in the

7   booking cell, Plaintiff was given a pen to write down the code

8   for telephone calls.  Compl. ¶¶ 14, 16.  When it was time to

9   handcuff Plaintiff and escort her out of the room, one of the

10  Shasta County Sheriff's Deputies told her to leave the pen

11  behind.  Compl. ¶ 16.  In response, Plaintiff tossed the pen back

12  toward the room she was being escorted from.  Compl. ¶ 17.

13  Plaintiff alleges that, as soon as she did this, the deputy who

14  was handcuffing her pulled her left hand behind her back, shoved

15  her face and head into the wall, threw her on the ground, and got

16  on top of her.  Compl. ¶ 18.  Several other deputies got on top

17  of Plaintiff as well.  Compl. ¶ 19.  At the time, Plaintiff

18  weighed 113 pounds and was 5'5" tall.  Compl. ¶ 20.

19         Plaintiff sustained a large contusion and hematoma to her

20  forehead, a broken C-3 vertebra in her neck, a broken nose, a

21  concussion, and lacerations to her face and lip as a result of

22  the deputies' use of force.  Compl. ¶ 22.  Despite these serious

23  injuries, the deputies dragged her to the jail's infirmary only

24  to get the bleeding under control.  Compl. ¶ 23.  After the

25  infirmary visit, Plaintiff was escorted to a cell where she was

26

27  [1] This motion was determined to be suitable for decision without
    oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28  scheduled for September 15, 2020.

                                   2

1   ordered to undress while the cell door was open.  Compl. ¶ 24.

2   Sensing that she was seriously injured, Plaintiff pleaded for

3   help from her cell.  Compl. ¶ 25.  Eventually the deputies called

4   an ambulance and Plaintiff was transported to the Mercy Medical

5   Center Emergency Department.  Compl. ¶ 26.  After Plaintiff was

6   treated for her injuries, she was transported back to the jail

7   where she spent a night in custody.  Compl. ¶ 28.  She was

8   released the next day.  Id.

9

10                      II.   OPINION

11      A.   Judicial Notice

12      Defendant requests that the Court take judicial notice of

13   Plaintiff's August 2, 2019, tort claim against Defendant.

14   Request for Judicial Notice ("RJC"), ECF No. 21-2.  Plaintiff

15   does not oppose this request.  Rule 201 of the Federal Rules of

16   Evidence allows a court to take judicial notice of an

17   adjudicative fact that is "not subject to reasonable dispute,"

18   because it (1) "is generally known within the trial court's

19   territorial jurisdiction"; or (2) "can be accurately and readily

20   determined from sources whose accuracy cannot reasonably be

21   questioned."  Fed. R. Evid. 201(a)-(b).

22      Plaintiff's tort claim is part of Defendant's claim file

23   and is a public document not subject to reasonable dispute.  See

24   Clarke v. Upton, 703 F.Supp.2d 1037, 1042 (E.D. Cal. 2010)

25   (finding California Government Tort Claims and their rejections

26   the proper subject of judicial notice).  It is the proper

27   subject of judicial notice only to the extent that the Court

28   takes judicial notice of the fact that this claim was filed.

3

1    The Court cannot and does not take judicial notice of the truth
2    or falsity of the allegations in the tort claim.

3        B.   Legal Standard

4        A party may move for a judgment on the pleadings as soon as
5    the pleadings are closed, but no so late as to delay trial.  See
6    Fed. R. Civ. Proc. 12(c).  The time of filing is the principal
7    difference between a motion for judgment on the pleadings and a
8    motion to dismiss pursuant to Rule 12(b).  Dworkin v. Hustler
9    Magazine Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).  Otherwise,
10   the motions are functionally identical.  Id.  Thus, a Rule 12(c)
11   motion may be based on either: (1) the lack of a cognizable
12   legal theory; or (2) insufficient facts to support a cognizable
13   legal claim.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696,
14   699 (9th Cir. 1990).  A plaintiff need allege "only enough facts
15   to state a claim to relief that is plausible on its face."  Bell
16   Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

17       For the purposes of a motion for judgment on the pleadings,
18   "the allegations of the non-moving party must be accepted as
19   true, while the allegations of the moving party which have been
20   denied are assumed to be false."  Hal Roach Studios, Inc. v.
21   Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).
22   "Judgment on the pleadings is proper when the moving party
23   clearly establishes on the face of the pleadings that no
24   material issues of fact remains to be resolved and that it is
25   entitled to judgment as a matter of law."  Id.  It is improper
26   when the court must go beyond the pleadings to resolve the
27   issue.  Id.  However, on a Rule 12(c) motion, a court may
28   consider "facts that are contained in materials of which the

4

1  court may take judicial notice." Heliotrope Gen., Inc. v. Ford

2  Motor Co., 189 F.3d 971, 981 at n.18 (9th Cir. 1999) (internal

3  quotation marks and citation omitted).

4      C.   Analysis

5           1.   Monell

6      Municipalities can be sued directly under 42 U.S.C. § 1983

7  for an unconstitutional custom, policy, or practice. Monell v.

8  Dept. of Social Services, 436 U.S. 658, 690 (1978). To

9  establish municipal liability, a plaintiff must show (1) he

10 possessed a constitutional right and was deprived of that right,

11 (2) the municipality had a policy, (3) the policy amounts to

12 deliberate indifference to the plaintiff's constitutional right,

13 and (4) the policy was the moving force behind the

14 constitutional violation. Sweiha v. Cnty. of Alameda, No. 19-

15 CV-03098-LB, WL 48482227 (N.D. Cal. 2019) (citing Plumeau v.

16 Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir.

17 1997)).

18     A plaintiff can establish the existence of a policy or

19 custom with: (1) proof that a municipal employee committed the

20 alleged constitutional violation pursuant to a formal government

21 policy, or a "longstanding practice or custom," which

22 constitutes the standard operating procedure of the local

23 government entity; (2) proof that the individual who committed

24 the constitutional tort was an official with final policy-making

25 authority and that the challenged conduct was thus an act of

26 official government policy; or (3) proof that an official with

27 "final policymaking authority" ratified a subordinate's

28 unconstitutional decision or action and the basis for it.

1 | _Gillete v. Delmore_, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

2 | As an initial matter, Plaintiff asserts _Monell_ claims

3 | against Defendant Shasta County _and_ the Shasta County Sheriff's

4 | Department.  _See_ Compl. ¶¶ 36, 37, 41, 52, 63, 75, 84, 113.

5 | However, the Shasta County Sheriff's Department must be

6 | dismissed as a defendant.  Although municipalities, such as

7 | cities and counties, are amenable to suit under _Monell_,

8 | departments of municipal entities are not "persons" subject to

9 | suit under § 1983; therefore, the Sheriff's Department—a local

10 | law enforcement department—is not a proper party.  _Hervey v._

11 | _Estes_, 65 F.3d 784, 791-92 (9th Cir. 1995).  As such, Plaintiff

12 | cannot pursue her remaining § 1983 claims against the Sheriff's

13 | Department.  _See_ _Boone v. Deutsche Bank Nat'l Tr. Co._, No. 2:16-

14 | cv-1293, WL 117966 at *3 (E.D. Cal. 2017) ("Because the Solano

15 | County Sheriff's Department is not a 'person' within the meaning

16 | of [§] 1983, plaintiffs cannot maintain their claims against it

17 | under that statute as a matter of law.").

18 | In addition, Plaintiff alleges a _Monell_ claim against

19 | Defendant under a theory of _respondeat superior_.  _See_ Compl.

20 | ¶¶ 36, 37.  That theory fails as a matter of law.  It is well

21 | established that a city or county may not be held vicariously

22 | liable for the unconstitutional acts of its employees under the

23 | theory of _respondeat superior_.  _Board of Cty. Comm'rs. of Bryan_

24 | _Cty. v. Brown_, 520 U.S. 397, 403 (1997).  Thus, Plaintiff's

25 | attempt to hold Defendant vicariously liable for the actions of

26 | its employees is unavailing.

27 | The remainder of Plaintiff's _Monell_ claims against

28 | Defendant relies upon either proof of a longstanding

6

unconstitutional practice or custom or proof that an official ratified a subordinate's unconstitutional actions.  See Compl. ¶¶ 41, 52, 63, 75, 84, 113.  However, Plaintiff more or less repeats the same boilerplate allegation throughout the complaint.  That, "Defendants County and Sheriff are liable as municipal entities and agencies for . . . maintaining a policy, custom or practice of permitting or encouraging" some unconstitutional act.  And that, by either "failing to properly hire, train, supervise, or discipline their individual officers" or "failing to properly and adequately investigate complaints of retaliation" they ratified the constitutional violations.  Id.

These allegations, taken together, are insufficient to support either the existence of an unconstitutional custom or policy or the ratification of a subordinate's unconstitutional action and fail as a matter of law.  An unwritten policy or custom can form the basis of a Monell claim, but it must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice.  Monell, 436 U.S. at 691.  And "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy."  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). The complaint must "put forth additional facts regarding the specific nature of [the] alleged policy, custom, or practice. AE ex rel. Hernandez v. Cnty of Tulare, 666 F.3d 631, 637 (9th Cir. 2012).

Plaintiff presents one fact in support of the allegation

1   that Defendant has established unconstitutional customs and

2   ratified the unconstitutional acts of its subordinates.

3   Plaintiff alleges that, during her detention, jail personnel

4   told her that she "needed to do something" about the deputies'

5   behavior and that this was "not the first time this had

6   happened." See Compl. ¶ 31; see also Opp'n at 3-4.  This lone

7   factual assertion falls far short of establishing a practice "of

8   sufficient duration, frequency, and consistency such that the

9   alleged custom or practice has become a traditional method of

10  carrying out policy." Harper v. Cnty of Merced, Case No. 1:18-

11  cv-00562, WL 5880786 at *6 (E.D. Cal. 2018).  And Plaintiff's

12  recitation of the basic elements of a Monell claim, supported

13  only by facts specific to her arrest also fails to do so.

14      Insofar as Plaintiff asserts a Monell claim under a theory

15  of ratification, an isolated constitutional violation can give

16  rise to municipal liability if ratified by a person with "final

17  policymaking authority." Christie v. Iopa, 176 F.3d 1231, 1238

18  (9th Cir. 1999).  But Plaintiff does not present any factual

19  allegations suggesting a county official approved or ratified

20  this alleged unconstitutional practice.  To show ratification, a

21  plaintiff must prove "that the authorized policymakers approve a

22  subordinate's decision and the basis for it."  Id. at 1239

23  (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127

24  (1988)).  Therefore, ratification requires knowledge of the

25  alleged constitutional deprivation.  Id.  Plaintiff merely

26  alleges that Defendant ratified the constitutional violation by

27  failing "properly and adequately investigate complaints of

28  retaliation." See Compl. ¶¶ 37, 41, 52, 63, 75, 84, 113.  This

8

1   conclusory allegation is insufficient to state a cognizable

2   claim.  See Hicks v. Cnty of Stanislaus, Case No. 1:17-cv-01187,

3   WL 347790 at *6 (E.D. Cal. 2018) (dismissing a ratification

4   claim where the complaint contained "no factual allegations to

5   support the claim that the County 'approved, ratified, condoned,

6   encouraged, south to cover up, and/or tacitly authorized' the

7   conduct . . . .").

8        Accordingly, the Court GRANTS Defendant's request to

9   dismiss Plaintiff's § 1983 municipal liability claims under

10  Monell.  The Court also DISMISSES the Shasta County Sheriff's

11  Department as a defendant.

12              2.   Civil Code § 52.1

13       Plaintiff, in her sixth claim, alleges that Defendant has

14  violated California Civil Code § 52.1.  See Compl. ¶¶ 91-94.

15  Section 52.1 authorizes a claim for damages "against anyone who

16  interferes, or tries to do so, by threats, intimidation, or

17  coercion, with an individual's exercise or enjoyment of rights

18  secured by federal or state law."  Jones v. Kmart Corp., 17

19  Cal.4th 329, 331 (1998).  However, California Governmental Code

20  § 945.4 (the "Government Claims Act") provides that "no suit for

21  money or damages may be brought against a public

22  entity . . . until a written claim therefor has been presented

23  to the public entity and has been acted upon by the board, or

24  has been deemed to have been rejected by the board . . . ."  The

25  purpose of the Government Claims Act is "to provide the public

26  entity sufficient information to enable it to adequately

27  investigate claims and to settle them, if appropriate, without

28  the expense of litigation."  Stockett v. Ass'n of Cal. Water

                            9

1  Agencies Joint Powers Ins. Auth., 34 Cal.4th 441, 446 (2004)

2  (internal quotation marks omitted).  Consequently, a claim need

3  not contain the detail and specificity required of a pleading

4  but need only "fairly describe what [the] entity is alleged to

5  have done."  Id.

6      "Unless a specific exception applies, a suit for money or

7  damages includes all actions where the plaintiff is seeking

8  monetary relief, regardless whether the action is founded in

9  tort, contract or some other theory."  Lozada v. City and County

10 of San Francisco, 145 Cal.App.4th 1139, 1152 (2006) (internal

11 quotation marks and citations omitted).  "Government Code

12 section 905 lists several exceptions to the general rule that

13 public entities must be provided notice of all claims for money

14 or damages."  Id.  "[C]laims for damages for violations of

15 section [] 52.1 are not among them."  Gatto v. County of Sonoma,

16 98 Cal.App.4th 744, 763 (2002) (finding notice provision applies

17 to a civil action for damages under Cal. Civ. Code § 52.1).

18     Defendant argues that Plaintiff's sixth claim for violation

19 of Civil Code § 52.1 is barred as a matter of law because

20 Plaintiff's tort claim under the Government Claims Act did not

21 include a specific allegation that § 52.1 had been violated.

22 See Mot. at 7-8.  Defendant's position is "unduly restricting."

23 Wormuth v. Lammersville Union School District, 305 F.Supp.3d

24 1108, 1128 (E.D. Cal. 2018).  The Government Claims Act's filing

25 requirement serves to alert a public entity that something

26 happened and point the entity's investigation in the right

27 direction; it is not designed to eliminate meritorious claims.

28 Stockett, 34 Cal.4th at 449 ("[the statutes] should be given a

1  liberal construction to permit full adjudication on the

2  merits.") (internal quotation marks and citation omitted).  "A

3  complaint's fuller exposition of the factual basis beyond that

4  given in the claim is not fatal, so long as the complaint is not

5  based on an entirely different set of facts."  Id. at 447

6  (internal quotation marks and citation omitted).

7      Plaintiff provided Defendant with fair notice of her action

8  for damages under California Civil Code § 52.1.  See RJN at 4-7.

9  She filed her tort claim pursuant to the Government Claims Act

10 on August 2, 2019, and did not file the instant lawsuit in

11 Sacramento Superior Court until January 23, 2020.  See RJN;

12 Compl.; see also Cal. Gov. Code § 911.2(a).  Plaintiff's timely

13 filing notified Defendant of all the relevant circumstances,

14 dates, and parties involved in the incident.  See id.  It

15 adequately alerted Defendant that something happened and

16 provided more than enough facts and details to point Defendant's

17 investigation in the right direction.  That Plaintiff simply did

18 not specify that she would later allege the incident amounted to

19 a violation of § 52.1 does not render her filing incomplete and

20 does not bar her § 52.1 claim against Defendant in this

21 complaint.

22      Accordingly, the Court DENIES Defendant's request to

23 dismiss Plaintiff's sixth claim for violation of California

24 Civil Code § 52.1.

25          3.   Negligent Hiring, Training, and Supervision

26      Plaintiff's seventh claim alleges negligence by Defendant

27 in the hiring, training, and supervision of its sheriff's

28 deputies.  See Compl. ¶ 98.  Defendant argues that it is not

11

subject to a negligent hiring, training, and supervision claim in the absence of a statute to impose direct liability on it. See Mot. at 9-10. Defendant is correct. See Hernandez v. Cnty. of Tulare, 666 F.3d 631, 638 (9th Cir. 2012) ("California public entities are not subject to common law tort liability; all liability must be pursuant to statute."); see also Berman v. Sink, 2013 WL 2360899 at *16 (E.D. Cal. 2013) ("There is no dispute that the County is not subject to a direct claim for negligent hiring, retention, supervision, training and staffing. Such a direct negligence claim is subject to dismissal."). California state courts have reached the same result. See de Villers v. Cnty. of San Diego, 156 Cal.App.4th 238, 253 (2007) ("We find no relevant case law approving a claim for direct liability based on a public entity's allegedly negligent hiring and supervision practices.").

Plaintiff cites to no relevant statute imposing a mandatory duty on Defendant that would give rise to a negligent hiring, training, and supervision cause of action. This claim fails as a matter of law. Accordingly, the Court GRANTS Defendant's request to dismiss Plaintiff's seventh claim to the extent it alleges Defendant negligently hired, trained, and supervised its sheriff's deputies.

### III.   ORDER

For the reasons set forth above, the Court GRANTS in part and DENIES in part Defendant's Motion for Judgment on the Pleadings.  The Court:

1.   GRANTS Defendant's Motion as to the Monell claims

1  pursuant to 42 U.S.C. § 1983 without prejudice;

2      2.    DISMISSES the Shasta County Sheriff's Department as a

3  defendant with prejudice;

4      3.    DENIES Defendant's Motion as to the sixth claim for

5  violation of California Civil Code § 52.1; and

6      4.    GRANTS Defendant's Motion as to the seventh claim

7  against it for negligent hiring, training, and supervision

8  without prejudice.

9      IT IS SO ORDERED.

10 Dated: November 2, 2020

12 _____
   JOHN A. MENDEZ,
   UNITED STATES DISTRICT JUDGE